UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CASE NO.: 1:14-CR-6-HAB |
| | ) |
| TRAVON RUSSELL | ) |

**OPINION AND ORDER**

Before the Court is Defendant Travon Russell's ("the Defendant's") Motion for Modification of Sentence (ECF No. 91) filed on April 27, 2020. The Government responded in opposition on May 26, 2020. For the following reasons, the Defendant's Motion will be DENIED.

**PROCEDURAL BACKGROUND**

On July 30, 2014, the Defendant was sentenced to 24 months' imprisonment and two years of supervised release upon his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendant was released from his initial term of imprisonment on November 13, 2015. On November 8, 2016, Defendant's term of supervised release was revoked and he was sentenced to 6 months' imprisonment and an additional one year of supervised release. He was released on or about March 14, 2017 and began his second term of supervised release. On July 10, 2018, Defendant was convicted in the Allen County Superior Court in case number 02D04-1711-F2-35 of the felonies of neglect of a dependent and possession of 10-28 grams of cocaine. The state court imposed sentences of one year and four years (respectively) for the counts of conviction, to run concurrently. On August 30, 2018, Defendant's term of supervised release was revoked for a second time, and he was sentenced to a term of imprisonment of 12 months and one day, to run consecutively to the sentence imposed by the Allen County Superior Court. The

Defendant's projected release date from the Indiana Department of Corrections is June 20, 2020. Thus, the Defendant is not currently in the custody of the federal Bureau of Prisons (BOP) and is being housed at Westville Correctional Institute in Westville, IN.

## **DISCUSSION**

The Defendant's motion requests this court to "either reduce or suspend" his sentence on his second supervised release violation. In support of his request, he asserts that he has successfully participated in and completed the Recovery While Incarcerated (RWI) program, has not received any major discipline while in state custody, and has requested placement in available classes or groups to further educate himself. Additionally, he seeks to be placed on home detention when his federal sentence commences "due to the fact that Covid-19 (coronavirus) is attacking his culture." (ECF No. 91 at 1.)

Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A).[1] Under this provision, a court may not modify a term of imprisonment except that –

(1) in any case --

   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the

---

[1] Another provision permits the court to reduce a sentence based on a retroactively applicable amendment to the sentencing guidelines that lowers the defendant's guideline range. 18 U.S.C. § 3582(c)(2). The Defendant's motion does not clearly articulate which of the exceptions he relies upon but he has made no argument that any modification or amendment to the guidelines range is applicable to his federal sentence and thus, the Court has not considered this provision.

> factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction …
>
> … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i). As has been the generalized argument by Defendants nationwide, Defendant asserts that he fears contracting COVID-19 and "it would be best that the Defendant be allowed to participate in the Federal house arrest program." (ECF No. 91 at 1.)

Because the Defendant, not the Director of the BOP, filed the motion, the Government asserts that the Defendant must satisfy the statutory exhaustion requirement to proceed further. The Government points out that the Defendant has not done so and indeed, he is unable to do so, as he remains in state custody and has not begun his consecutive sentence with the Bureau of Prisons. This alone, the Government urges, sinks his request for modification. Alternatively, the Government claims that even if the Defendant had attempted to exhaust his administrative remedies, he still would not prevail as he has altogether failed to assert any of the type of compelling and extraordinary circumstances that would warrant the relief he seeks.

This Court has previously held that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, *see United States v. Hayden*, No. 1:07-CR-68-HAB, 2020 WL 2079293, at *1 (N.D. Ind. Apr. 30, 2020), relying on the Seventh Circuit's decision in *United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015). Thus, in light of that decision, the Defendant's motion is properly before this Court regardless of whether he has or has not completed the statutory exhaustion process.[2]

That said, the Government urges that the Defendant's failure to exhaust under § 3582(c)(1)(A) makes him ineligible for further consideration under the compassionate release

---

[2] The Government resists the argument that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional and has, in other compassionate release cases in this division, reserved its right to contest this issue. *See United States v. Shellman,* 1:17-cv-17, ECF No. 265 at fn. 4.

3

analysis because under *McCarthy v. Madigan,* 503 U.S. 140, 144 (1992), "the court may not ignore a statutory command such as that presented in § 3582(c)(1)(A)." (ECF No. 98 at 5). The Government extrapolates further noting that the Supreme Court's more recent decision in *Ross v. Blake*, 136 S.Ct. 1850 (2016) demands the conclusion that the mandatory language of the exhaustion language in § 3582(c)(1)(A) means "a court may not excuse a failure to exhaust" even to accommodate exceptional circumstances. *Ross,* 136 S.Ct. at 1855–1856.

Without doubt, § 3582 (c)(1)(A) unambiguously conditions a court's authority to modify a previously imposed sentence on satisfaction of its exhaustion provisions. In *Hayden,* this Court discussed, without deciding, whether a non-jurisdictional exhaustion requirement may be subject to waiver by a court over the government's objection. *Hayden,* 2020 WL 2079293 at *2–3. The Court noted that "[b]ecause § 3582(c)(1)(A)'s exhaustion requirement is not a judge-made doctrine, but derives from the statute itself, a court can only create exceptions to exhaustion where Congress intended." *Id.* at *3 (citing *Ross,* 136 S.Ct. at 1857 (2016)(noting that when Congress "sets the rules" for statutory exhaustion provisions they are not susceptible to judge-made exceptions). However, in *Hayden*, this Court did not have to opine further because it determined that Hayden did, in fact, satisfy the exhaustion requirements. *Hayden*, 2020 WL 2079293 at *3.

This, of course, brings the Court to where we are today. District courts across the country are struggling daily with whether strict compliance with the exhaustion provision is necessary, especially in light of the serious risks associated with COVID-19. Some courts, for instance, have sided with the statutory language itself to conclude that strict compliance with the 30-day requirement is mandatory, not subject to any exception, *see, e.g., United States v. Raia*, 954 F.3d 594, 597, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (concluding that failure to exhaust administrative remedies for request for compassionate release based on COVID-19 pandemic

4

presented "a glaring roadblock foreclosing compassionate release at this point" and that "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance"); *United States v. Hayes,* No. 1:15-CR-00150-JPH-TAB, 2020 WL 2949790 (S.D. Ind. June 3, 2020) ("This district court cannot consider a motion under § 3582(c)(1)(A)(i) unless a defendant has exhausted his administrative remedies—even in the face of the COVID-19 pandemic."); *United States v. Lohmeier*, No. 12 CR 1005, 2020 WL 2836817, at *2 (N.D. Ill. June 1, 2020) ("A mandatory statutory exhaustion requirement is just that: mandatory. So said the Supreme Court in *Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016)"); *United States v. Butcher*, No. 5:12CR24, 2020 WL 2610738, at *2 (N.D. Ohio May 22, 2020)(holding that "Congress 'clearly mandated' exhaustion in § 3582(c)(1)(A)" and despite other contrary district court opinions, it will not, due to COVID 19 engraft an exception onto § 3582(c)(1)(A's) exhaustion requirement); *United States v. Cox*, ___ F.Supp.3d___, 2020 WL 1923220, at *4 (S.D. Ind. Apr. 21, 2020)(; *United States v. Vence-Small*, __ F.Supp.3d ___, 2020 WL 1921590, at *3 (D. Conn. Apr. 20, 2020) ("Importantly, however, Congress conditioned the right of a defendant to file a motion for sentence reduction upon the defendant's first applying to the prison warden to file a motion on the defendant's behalf."); *United States v. Fana*, 1:19-cr-11-GHW, 2020 WL 1816193, at *5 (S.D.N.Y. Apr. 10, 2020) ("The language of this provision ("[t]he court may not") expressly prohibits the Court from granting relief unless the statutory preconditions are satisfied.").

Other courts have considered congressional intent and concluded that, given the situation with the COVID-19 pandemic, Congress would not intend § 3582(c)(1)(A)'s exhaustion requirement to apply rigidly. *See United States v. Feucht*, No. 11-CR-60025, 2020 WL 2781600, at *2 (S.D. Fla. May 28, 2020) ("Although § 3582(c)(1)(A) plainly imposes an administrative exhaustion requirement, the United States Supreme Court has held that, even in such

circumstances, an exception exists where "the interests of the individual weigh heavily against requiring administrative exhaustion.")(citing *McCarthy,* 503 U.S. at 146 ); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at *5 (C.D. Ill. May 21, 2020) (finding § 3582(c)(1)(A) does not require a court to wait to consider a compassionate release request, but noting the decision should be made on a case-by-case basis); *United States v. Scott,* ___ F.Supp.3d ___, 2020 WL 2508894 at *7 (E.D.Wis. May 15, 2020)("[N]othing in the statutory scheme suggests that Congress intended to preclude a district court from exercising judicial discretion and to take into account exigent circumstances related to why the defendant seeks compassionate release."); *United States v. Pinkerton*, No. 15-cr-30045-3, 2020 WL 2083968, at *4–5 (C.D. Ill. Apr. 30, 2020) ("Mandating the exhaustion requirement in this case and other cases around the country during the COVID-19 pandemic cannot be what Congress intended."); *United States v. Livingston*, 2020 WL 1905202, at *1 (E.D.N.Y. Apr. 17, 2020) (concluding that "the crafting of judge-made exceptions to [the] statutory exhaustion requirement" is appropriate, but denying compassionate relief on the merits); *United States v. Guzman Soto*, ___ F.Supp.3d ___, 2020 WL 1905323 (D. Mass. Apr. 17, 2020)("as Congress has carved out an alternative to exhaustion in the language of § 3582(c)(1)(A), the court finds it has authority and discretion to waive the thirty-day waiting period based on exigent circumstances."); *United States v. Ben-Yhwh*, ––– F.Supp.3d –––, –––, 2020 WL 1874125, at *3 (D. Haw. Apr. 13, 2020) ("The exhaustion requirement is therefore not absolute, but there must be justification for waiving it…"); *United States v. McCarthy*, ––– F.Supp.3d –––, –––, 2020 WL 1698732, at *4 (D. Conn. Apr. 8, 2020) (granting relief after excusing exhaustion where it would be futile, inadequate, and unduly prejudicial); *United States v. Perez*, ––– F.Supp.3d –––, –––, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020) (statutory exhaustion is not absolute and may be waived).

This debate is ongoing within the district courts in the Seventh Circuit as well. Compare, *Hayes,* 2020 WL 2949790 and *Lohmeier*, 2020 WL 2836817, at *2 (N.D. Ill. June 1, 2020) with *Pinkerton*, 2020 WL 2083968, at *4–5 (C.D. Ill. Apr. 30, 2020) and *Scott,* ___ F.Supp.3d ___, 2020 WL 2508894 at *7 (E.D.Wis. May 15, 2020). And for that reason, this Court is not champing at the bit to weigh in and further muddy the waters where, as here, it is unnecessary for the Court to do so to resolve the Defendant's motion.³ Moreover, given the within Circuit split on the issue, the Court eagerly awaits guidance from the Seventh Circuit should one of these cases proceeds on appeal.⁴ For now, however, even if the Court waived the exhaustion requirement in this case, the Court would still deny Defendant's motion on the merits. It is to this analysis the Court now turns.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission. *See* 28 U.S.C. § 994(t). The Commission's policy statement provides:

---

³ What does appear clear, however, is that the *government* may affirmatively waive § 3582(c)(1)(A)'s exhaustion requirement. *See, e.g., United States v. Russo*, ––– F.Supp.3d –––, –––, 2020 WL 1862294, at *5 (S.D.N.Y. Apr. 14, 2020) ("[O]ne key consequence of the section not being jurisdictional is that the Government can waive the affirmative defense of exhaustion."); *Cox,* ___ F.3d. ___, 2020 WL 1923220 at *3 ("Because the exhaustion requirement is not jurisdictional, the government could waive it in an appropriate case."). And, the Court notes that in circumstances like the one here where a defendant is not in BOP custody, the Government has regularly waived the exhaustion requirement to reach the merits. See, e.g., *United States v. Johnson*, No. 17-CR-162, 2020 WL 2770266, at *2 (E.D. Wis. May 28, 2020) ("The parties agree that because defendant has not been designated to a BOP facility he cannot ask the warden for compassionate release or otherwise pursue administrative remedies with the agency… Accordingly, the statute's "exhaustion" requirement is not [a] barrier to relief."); *United States v. Edington*, No. 19-CR-00174-REB-1, 2020 WL 2744140, at *2 (D. Colo. May 27, 2020) ("Given the unique circumstances of this case, where Ms. Edington is not presently in federal custody, the government agrees that the exhaustion requirement may be waived as futile."); *United States v Jackson,* No. 5:02-cr-30020, 2020 WL 2735724 (W.D.Va. May 26, 2020) ("the government concedes 'exhaustion is not required because the defendant is being held at CVRJ, which is not a BOP facility'"); *United States v. Ullings*, No. 1:10-CR-00406, 2020 WL 2394096, at *3 (N.D. Ga. May 12, 2020) (noting that the defendant was "in custody" but not in "BOP custody" but the Government, while insisting she should not be released — agrees she has exhausted any administrative remedies).

⁴ The Court notes that the appeals time has run in *Pinkerton*, but the remaining three cases cited may well end up on appeal.

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction ...
> (2)     the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3)     the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The commentary to the policy statement provides that extraordinary and compelling reasons exist under these circumstances:

> (A) Medical Condition of the Defendant.—
>
> (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii)  The defendant is—
>       (I)   suffering from a serious physical or medical condition,
>       (II)  suffering from a serious functional or cognitive impairment, or
>       (III) experiencing deteriorating physical or mental health because of the aging process,
>
>       that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>     (i)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.

        (ii)       The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)       Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

In his motion, the Defendant relates his positive adjustment and completion of programming while in state custody to advocate for his release. While the Court encourages the Defendant to continue down this path, this alone will not suffice to modify his sentence. He has pointed to none of the above Policy circumstances – no medical conditions, no advanced age (he's 28) or familial reasons – to justify his release to home detention. Moreover, since he has yet to be designated to a BOP facility and has not set out any medical conditions placing him at risk, he cannot provide any evidence that his particular designated facility is facing a serious outbreak of COVID-19 infection which it is unable to contain and which places him at significant risk. Even so, "[t]he mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, United States v. Melgarejo*, No. 12-cr-20050, ECF Doc. 41 at p. 5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id.* at 5–6. *See also United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

Defendant's inability to demonstrate any of the considerations that would qualify him for release is fatal to his request. As a result, his Motion must be DENIED.

## **CONCLUSION**

Based on the foregoing, the Defendant's Motion for Compassionate Release (ECF No. 91) is DENIED.

So Ordered. On June 4, 2020.

                                              s/ *Holly A. Brady*
                                              JUDGE HOLLY A. BRADY
                                              UNITED STATES DISTRICT COURT